UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

      v.                                                         Crim. Action No. 2:11-cr-22-4

Desmel Cooper

## REPORT AND RECOMMENDATION
(Doc. 603)

Desmel Cooper, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate a sentence imposed upon him in 2012 in the United States District Court for the District of Vermont.  Cooper entered a plea of guilty to engaging in a conspiracy to distribute a quantity of heroin, a Schedule I controlled substance, and 28 grams or more of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B).  Judge William K. Sessions III subsequently sentenced him to a 108-month term of imprisonment.  Cooper was represented at sentencing by Attorney Ernest M. Allen III.

Cooper now asserts that he received ineffective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution at time of sentencing. Concluding that Cooper has failed to establish that Attorney Allen's performance was objectively deficient or that Cooper sustained any prejudice, I recommend the Motion to Vacate (Doc. 603) be DENIED.

## Background

**I.      Indictment and Plea of Guilty**

On December 13, 2011, Desmel Cooper and 14 other individuals were charged in a Second Superseding Indictment with several violations of the Controlled Substances Act and the Gun Control Act.  (Doc. 334.)  On December 19, 2011, a written plea agreement was filed in which Cooper agreed to plead guilty to Count I of the Second Superseding Indictment.  (Doc. 344)  Count I charged Cooper with engaging in a conspiracy with others to distribute heroin and 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1).  (*Id.* at 1.)  In the agreement, Cooper acknowledged that he faced a maximum term of imprisonment of up to 40 years, and a mandatory minimum term of five years.  (*Id.*)  Cooper stipulated that the conspiracy count to which he was pleading guilty involved at least 112 grams of cocaine base and at least 80 grams of heroin.  (*Id.* at 2.)

In exchange for Cooper's guilty plea, the government agreed, *inter alia*, to move to dismiss the remaining counts of the Second Superseding Indictment at sentencing, and to recommend that Cooper receive the credit for acceptance of responsibility under USSG §3E1.1.  The government also agreed to recommend a sentence of not more than 151 months, pursuant to Fed. R. Crim. P. 11(c)(1)(B).  (*Id.* at 4.)  Cooper remained free to argue for a lesser sentence, although he acknowledged that he faced the minimum 60-month term.

On December 21, 2011, Cooper appeared before Judge Sessions to enter his plea of guilty pursuant Fed. R. Crim. P. 11.  (Doc. 608.)  Judge Sessions engaged in the

colloquy required by Rule 11, and reviewed the specific terms of the plea agreement with Cooper, including his stipulation as to drug quantity and the government's non-binding agreement to recommend a sentence of not more than 151 months. Judge Sessions then accepted Cooper's guilty plea, concluding that it was being entered voluntarily and with a full understanding of the charges and their consequences. Judge Sessions thereupon ordered the preparation of a presentence report ("PSR") in anticipation of sentencing.

## II.     The PSR and Objections

The PSR concluded that Cooper faced an imprisonment range of 262–327 months pursuant to the Sentencing Guidelines. (PSR ¶ 98.) This conclusion was arrived at in the following manner. The PSR assigned Cooper a base offense level of 28 based upon the drug-quantity stipulation. (PSR ¶ 51.) Specific offense characteristics under the Sentencing Guidelines included (1) a two-point enhancement under USSG §2D1.1(b)(1) for possession of a firearm; (2) a two-point enhancement under USSG §2D1.1(b)(2) for use of violence and threats of violence; (3) a two-point enhancement under USSG §2D1.1(b)(14) for use of fear and impulse to involve a minor participant in the drug conspiracy; and (4) a three-point enhancement under USSG §3B1.1(c) for Cooper's role as manager or supervisor of criminal activity involving five or more persons. (*Id.* ¶¶ 52, 54). Cooper was accorded the three-level reduction for acceptance of responsibility under USSG §3E1.1. The adjusted offense level was thus determined to be 34. (PSR ¶ 59.)

Cooper had three prior felony convictions for sale of controlled substances. It was therefore concluded that he was a career offender under USSG §4B1.1(b), placing him in Criminal History Category VI. Using the adjusted offense level of 34 under Category VI,

the PSR concluded that Cooper faced a sentence of 262–327 months under the Sentencing Guidelines.

Prior to sentencing, Attorney Allen filed a memorandum asserting various objections to the PSR. Specifically, Attorney Allen objected to the criminal-history calculation and to each of the specific offense characteristics applied in the offense-level determination. (Doc. 452.) He also opposed an obstruction-of-justice enhancement sought by the government, ostensibly for Cooper's attempts to intimidate witnesses Christopher Handy and Vincent Gore in the case. Attorney Allen further argued that a downward departure from the applicable Sentencing Guideline range was warranted due to extraordinary family circumstances, noting that Cooper was a source of financial support and adult guidance for his three children. (*Id.* at 3.) In addition, Allen argued that Cooper's mother was seriously ill, and that her life expectancy would suffer if her son were to sustain a lengthy term of incarceration.

Attorney Allen further argued that a departure was warranted because Cooper's criminal-history calculation substantially overstated the seriousness of his prior interactions with the criminal-justice system, and "in light of the distortive effect of the structure of this conspiracy on the guidelines calculation." (*Id.* at 4.) With respect to the latter point, Allen contended that the conspiracy was, in reality, a "collective" where each member acted with a significant degree of autonomy and the overall drug-quantity calculation attributable to the conspirators distorted this autonomy.

In addition to seeking a downward departure from the applicable Sentencing Guideline range, Allen argued for the imposition of a non-Guideline sentence pursuant to

the statutory factors set forth in 18 U.S.C. § 3553(a).  (*Id.* at 4–5).  He advanced several reasons for a variance from the Guideline range, including Cooper's record of employment, his difficult upbringing, his efforts to meet parental obligations, and a lack of guidance during his youth.  (*Id.* at 5.)  Allen further argued that the five-year mandatory minimum term of imprisonment required as a consequence of Cooper's plea was far more serious than any sentence he had received for his prior criminal convictions.  Allen also supplied the Court with a significant number of letters attesting to Cooper's character.

The government concurred with the conclusions of the PSR, except to the extent it also sought the obstruction-of-justice enhancement.  (Doc. 458.)  The government argued for a non-Guideline sentence of 151 months, consistent with its obligations under the plea agreement.  (*Id.*)

## III.   Sentencing Hearing

A sentencing hearing was held before Judge Sessions on May 1, 2012.  (Doc. 609-1.)  After ascertaining that Cooper had received and reviewed the PSR with his lawyer, Judge Sessions inquired of the defendant and Attorney Allen whether there were any factual inaccuracies in the PSR.  Both Cooper and Attorney Allen denied any inaccuracies, with Attorney Allen stating that "I think everyone probably said to the authorities the things they're quoted as having said." (*Id.* at 4.)

Judge Sessions thereupon summarized Attorney Allen's challenges to the Sentencing Guideline calculation, and the government proceeded to present evidence to support the specific offense characteristics.  Det. Daniel Merchand, the lead investigator,

5

described the overall investigation, including the investigation into an assault. Jason Brandon, the assault victim, had identified Desmel Cooper as one of multiple participants in the assault. Police also discovered pictures of Brandon and his injuries on Cooper's cellphone. (*Id.* at 12.) Attorney Allen vigorously cross-examined Detective Merchand, eliciting from him that Brandon had told investigators two versions of the assault, with inconsistencies as to the identities of the participants. (*Id*. at 14–15.)

  The government then called four members of the charged conspiracy, each of whom had pled guilty to felony offenses and were testifying pursuant to cooperation agreements. Justin Goulet, a user of heroin, described his exchange of a hand gun as payment for a preexisting heroin debt, identifying the defendant as the person who received the firearm. (*Id.* at 24.) Goulet also testified about false statements he made to a gun dealer in order to acquire a second hand gun on behalf of codefendant Tysean Cooper. (*Id.* at 26.) Goulet further admitted that he had lied to investigators, initially telling the police that two firearms had been stolen from him by Desmel Cooper, and coconspirators, Tysean Cooper, Isiah Smith, and Shondell Corbitt . (*Id.* at 28.) Goulet testified that he regularly acquired heroin from the members of the conspiracy.

  On cross-examination by Attorney Allen, Goulet conceded that he was anticipating a benefit at time of his sentencing in exchange for his testimony. Allen then proceeded to vigorously question Goulet about the falsehoods Goulet told investigators regarding the two allegedly stolen handguns. (*Id.* at 38–41.) Allen also inquired about Jason Brandon, the assault victim, as Goulet was acquainted with Brandon. Allen elicited

6

from Goulet that, in Goulet's opinion, Brandon was not credible given the extent of Brandon's drug addiction.

Larry Paap, who had pled guilty to one count of conspiracy to distribute cocaine base and was awaiting sentencing, testified that he was a user of crack cocaine and had received crack cocaine from Cooper and others. Paap testified he allowed Cooper and other conspirators to sell cocaine and heroin from his residence in exchange for drugs. (*Id.* at 45.) Paap also purchased cocaine from Cooper and his coconspirators, describing the frequency of his purchases as "[t]wo, three times a week. Four. Depends if I had money or no[] money." (*Id.* at 49.) In his testimony, Paap described an incident where he and a female companion were ordered at gunpoint to strip naked by three of the conspirators, including defendant Cooper, to permit the conspirators to physically inspect Paap and his companion for an electronic recording device. Cooper himself inspected the female for a device. (*Id.* at 57.) Paap indicated that it was not Cooper who possessed the gun during that incident. (*Id.* at 55–58.) Attorney Allen cross-examined Paap about that incident, again eliciting that it was another person, not Desmel Cooper, who actually pointed the gun at Paap and his companion.

Conspirator Christopher Handy testified that he had been addicted to controlled substances. Handy had also pled guilty to participating in the charged conspiracy, and was awaiting sentencing at the time of his testimony. (PSR ¶ 9.) Handy stated that he acquired drugs from members of the conspiracy, referring to the heroin as "the best Burlington, Vermont has ever seen." (Doc. 609-1 at 83.) Handy described an incident following the arrest of the members of the conspiracy where he was subjected to

7

intimidation by Cooper in jail.  According to Handy, Cooper accused him of being a "rat" and a "snitch,"[1] but that he would not be bothered in the facility if he put money in Cooper's commissary account at the facility. (*Id.* at 73–74.)  As with the other witnesses, Handy was subjected to vigorous cross-examination.  Attorney Allen explored Handy's cooperation deal with the government, his hope of receiving a benefit for his testimony, his addiction, and his struggles while on release, including being removed from a residential-treatment program.  (*Id.* at 84–91.)  Allen also sought to get Handy to admit that he had listened in on a private attorney conference Allen held with Cooper in the detention facility prior to sentencing–a claim Handy denied.  In response to Handy's claim of intimidation by Cooper, Allen elicited from Handy that he had been housed with Cooper for a lengthy period of time and had not sought a transfer from the facility.  (*Id.* at 90.)

      Finally the government called Vincent Gore.  Gore had also pled guilty to participating in the charged conspiracy and was awaiting sentencing.  He testified that Desmel Cooper's nickname was "Bigs," a name that had been frequently employed by the other witnesses during their testimony.  (*Id.* at 102.)  He admitted that he was a member of the conspiracy, but had only come to Vermont once to sell controlled substances.  Gore described the sale that led to his arrest.  (*Id*. at 106–09.)  Gore also described a conversation he had with Cooper in a detention facility where Cooper encouraged him not to speak with authorities.  This allegedly led to a shoving and

---

[1] This testimony, presented in support of the government's assertion that Cooper engaged in obstruction of justice under USSG §3C1.1 was, in Judge Sessions's view, "not particularly significant," given the Court's ultimate decision to impose a non-Guideline sentence. (Doc. 609-1 at 141.)

8

pushing incident between Gore and Cooper.  Attorney Allen cross-examined Gore, suggesting that Gore possessed a firearm during the conspiracy.  Allen also asserted that Gore was upset at being involved in the conspiracy, and that Gore had in fact instigated the shoving match with Cooper.  After the government rested its evidentiary presentation, Attorney Allen presented no evidence.

Judge Sessions engaged Attorney Allen on the appropriateness of applying the enhancements under the Sentencing Guidelines.  Judge Sessions then focused upon the fact that pursuant to the plea agreement the government made a recommendation that the Court impose a non-Guideline sentence of 151 months, which represented a substantial variance from the 262–327 month range directed by the Sentencing Guidelines.  Judge Sessions indicated that he was going to accept that recommendation, and, in fact, impose a non-Guideline sentence.  He recognized the need to make findings under the Guidelines, but questioned whether or not such an exercise was helpful to the ultimate question of an appropriate sentence:

> THE COURT: The broader question is, if the Court accepts the recommendation from the government setting the high end of the sentence at 151 months, doesn't all of these other issues fall by the wayside –
>
> MR. ALLEN: Yes.
>
> THE COURT: -- because he is facing under a guideline range of 262 to 325 months, and if there's obstruction, then it would be two levels above and beyond that.  So you are talking about 25 to 30 years.  So –
>
> MR. ALLEN: I agree.  If the Court is prepared to agree with the parties, although the parties of course don't come up with the same number, that it should be a non-guideline sentence, then --

9

THE COURT: Well, I will state on the record -- well, I will make some initial findings if that would be of some assistance. This is a really complex case. On the one hand, I'm just shocked at the threats of violence that exist here, and that is, you know, for me, extraordinarily distressing. But there are also extenuating circumstances. There's some extenuating circumstances about Mr. Cooper's life, frankly, and his relationship with kids, but more than that, about this particular offense. You know, I look at this as not necessarily a top-down conspiracy in which the person at the top receives a much more significant sentence. I look at this is a very serious conspiracy but not one that's sophisticated; that essentially these are street-level dealers. Now, having said that, there's also particularly aggravating factors. But based upon my overall assessment, together with the recommendation of the parties, I -- I am clearly not going to impose a sentence which exceeds the recommendation, the high-end recommendation of the parties, and consider a sentence below that. So I -- I mean, we can get into the fine tuning of the guidelines. As you know, I love to do that, but I am not so sure that that's particularly helpful at this point.

MR. ALLEN: If your Honor is in agreement that we're -- well, at least to the extent of accepting the ceiling of -- established by the government's recommendation, then we are out of the guidelines. I think your Honor has to make findings on the guidelines, but they don't particularly affect the outcome.

THE COURT: Right. Let me ask Ms. Nolan about that. Do you have any difficulty in the Court basically making the findings but saying on the record that, you know, I accept the recommendation that's been made by both sides here, and so this would be a non-guideline sentence? Do we need to get through the whole details of --

MS. NOLAN: I don't think it's a joint recommendation and I don't think Mr. Allen's agreeing to 151.

THE COURT: No. It's a joint recommendation to no more than 151 months.

(*Id.* 119–21.)

As a result, Judge Sessions proceeded to hear argument on what an appropriate sentence would be in light of the sentencing factors set forth in 18 U.S.C. § 3553(a).

10

Attorney Allen advanced several arguments for a sentence of 60 months, the mandatory minimum term. Allen highlighted the fact that although his client had sustained prior felony convictions, Cooper had not previously served such a substantial term of imprisonment. He contended that his client did not personally employ violence, and noted his record of employment and strong family ties. In fact, Cooper was devoted to the care and upbringing of his children. Allen argued that it was only when his client became unemployed did he turn to unlawful activity. Allen argued that the statutory directive to impose a sentence no greater than necessary to achieve the goals of sentencing called for a sentence of 60 months. After hearing from the government and Cooper himself, Judge Sessions stated his findings with regard to the Sentencing Guidelines:

> Okay, let me begin with the guideline calculations. First, the Court accepts the findings of the probation officer in regard to both the base offense level of 28, together with the specific offense characteristics, and the role in the offense. In particular, the Court finds that the drug quantity in the presentence report was accurate.
>
> The Court finds that this defendant was involved in use of a firearm during the course of the conspiracy. There's a two-level increase. There's also a two-level increase for violence, which was demonstrated on a number of occasions, and in particular, Mr. Brandon. The Court finds that the findings of the probation officer were substantiated, and there's a two-level increase for that.
>
> In addition, in regard to the role in the offense, I look at this not as a top-to-bottom conspiracy but I look at this as essentially four individuals with their own individual activities but then coordinated to create a conspiracy, each person in charge of their own activities.
>
> It may very well be that this defendant was a little bit more in charge because he told people what to do, or it could very well be, as someone said

>   in the pleadings, that he was louder than others, and as a result, he created an image of being in charge when in fact he was not.
>
>   But in terms of role in the offense, when directions are made to the various participants in the broader conspiracy, those are the individual addicts that were used, Mr. Cooper would have directed others to participate in the conspiracy, and the three-level increase is justified. And in particular, the two-level increase under 2D1.1(b)(14) is to be applied as well, and the Court will accept the findings of the probation officer in that regard.

(Doc. 609-1 at 139–41.)

These findings led Judge Sessions to conclude that the applicable Sentencing Guideline with respect to incarceration was 262 to 327 months as proposed in the PSR. (*Id.* at 145.) However, the Court agreed with the recommendation of both the government and the defendant that a non-Guideline sentence was appropriate, stating his reasons for the variance as follows:

>   Frankly, as I have indicated before, I think that those findings are not particularly significant considering all of the factors in determining what is the appropriate sentence.
>
>   What is unique about Mr. Cooper's case is he is obviously facing a huge sentence. He is a career offender, although the underlying offenses, as indicated by the government, were relatively short, were close in time, resulting in very short sentences, and this sentence would obviously be much more dramatic than the sentences that he had before.
>
>   He has got a tragic upbringing and he has got some very positive pro-social attributes. And, in particular, I notice going through his records that he has worked extensively, and he has got a level of commitment to his children which is significant, and I expect to be -- I expect is heartfelt. And I think that those play a part in what is an appropriate non-guideline sentence.

>So as a result, all of the factors I think suggest that a guideline sentence is not appropriate here, and so as a result, these particular findings are not particularly significant in terms of where the sentence falls.

(*Id.* at 141.)

As a result, Judge Sessions imposed a sentence of 108 months, to be followed by a four-year term of supervised release. The 108 month sentence represented a 154-month variance from the low end of the applicable Sentencing Guideline range.

## IV.   Direct Appeal

Cooper appealed to the Second Circuit Court of Appeals, contending that his sentence was procedurally and substantively unreasonable. Cooper specifically asserted that the sentence violated the parsimony clause of 18 U.S.C. § 3553(a). In a one-page summary order dated April 8, 2013, the Second Circuit rejected Cooper's arguments and affirmed his sentence. *United States v. Cooper*, 514 Fed. App'x 16 (2d Cir. 2013).

## V.   Instant Motion

Cooper's current Motion now advances four separately labeled but overlapping theories of ineffective assistance of sentencing counsel. First, Cooper contends that Attorney Allen failed to object to government witnesses' testimony. Second, he contends that Allen failed to address the Court concerning issues that were allegedly presented falsely by the government. Third, Cooper asserts that Allen allowed Judge Sessions to usurp the jury's role to find facts that increased his sentence. Finally, Cooper asserts a non-specific claim that Allen's representation violated his Sixth Amendment right to effective assistance of counsel.

## Discussion

I. **General Principles Governing § 2255 Proceedings and Constitutionally Required Assistance of Counsel**

A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, including sentencing.  *See, e.g.*, *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).  The attorney has an "overarching duty to advocate the defendant's cause." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  In order to succeed on a claim of ineffective assistance of counsel, a claimant must meet the two-pronged test established by *Strickland*:

> (1) he "must show that counsel's performance was deficient," [*Strickland*,] 466 U.S. at 687, 104 S.Ct. 2052, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. 2052; and (2) he must show "that the deficient performance prejudiced the defense," *id.* at 687, 104 S.Ct. 2052, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011).  "The IAC claim must be rejected if [a] defendant fails to meet either the performance prong or the prejudice prong." *Bennett*, 663 F.3d at 85.

A. **Performance Prong**

In applying the first prong of the *Strickland* test, determining the quality of representation, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be

14

considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted); *see also United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2001) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance.") (internal quotation marks and citations omitted). Cooper cannot satisfy this test.  He makes only generalized allegations that Attorney Allen failed to object to testimony at the sentencing, asserting that had Allen done so, he could have proved "instantly" that the witnesses were not credible.  Of course, an objection would have been fruitless, as the transcript reveals that testimony presented at sentencing was both admissible and plainly relevant.  The record also reveals that Allen vigorously cross-examined the witnesses.  Furthermore, the cross-examination was effective, as it either illustrated the witness' past addictions, their anticipated rewards or incentives for testifying, inconsistencies in their testimony, or inconsistencies in another witness's story.

   Cooper further contends without any reference to the record that Allen "failed to address the court with issues that were presented falsely by the government."  He does not specify what those "issues" were, and the record belies his claim.  Attorney Allen argued forcefully for a sentence at variance with both the Sentencing Guideline recommendation of 262–324 months and the government's recommendation of not more than 151 months.  Although Allen did not achieve the 60-month sentence that he advocated for, his arguments were largely successful as Cooper ultimately received a sentence of 108 months.

Cooper also contends that Attorney Allen failed to object when Judge Sessions "f[ou]nd facts that increased Cooper's sentence, which is a juror's duty." (Doc. 603 at 6.) Cooper's argument is legally flawed in its underlying assumption that the district court did not adhere to proper sentencing procedure. The application of various enhancements by a sentencing court without jury findings does not violate *Apprendi v. New Jersey*, 530 U.S. 466 (2000) or its progeny. Because the Sentencing Guidelines are advisory rather than mandatory, *see United States v. Booker*, 543 U.S. 220 (2005), an application of Sentencing Guideline enhancements that do not increase the statutory maximum or minimum penalty neither implicates nor violate a defendant's Sixth Amendment right to a jury trial. *See Alleyne v. United States*, 133 S. Ct. 2151, 2162–64 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury, but emphasizing the ruling "does not mean that any fact that influences judicial discretion" when imposing a sentence within the range prescribed by statute must be found by a jury); *see also United States v. Singletary*, 458 F.3d 72, 80 (2d Cir. 2006) (holding that judicial fact-finding at sentencing is "permissible—indeed, required—under an advisory Guidelines regime"). The district court of course engaged in the Sentencing Guideline calculation because it was required to do so prior to its decision to impose a non-Guideline sentence, which was one substantially less than that demanded by the Sentencing Guidelines. The ultimate sentence was within the statutorily mandated range, and there was no violation of Cooper's right to have a jury determine facts that increase a statutory maximum penalty. Nothing in *Alleyne* alters this conclusion. *See United States v. Ibrahim*, No. 12-953-CR, 2013 WL 3481421, at *4 (2d Cir. July 12, 2013).

### B. Prejudice

Under the prejudice prong of the *Strickland* test, a habeas petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. More precisely, with regard to sentencing, a petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. *See Herrera–Gomez v. United States*, Nos. 08 Civ. 7299(JGK), 05 Cr. 495(JGK), 2009 WL 4279439, at *5 (S.D.N.Y. Dec. 1, 2009) (*citing United States v. Workman* 110 F.3d 915, 920 (2d Cir. 1997)). Cooper cannot satisfy his burden. Attorney Allen successfully negotiated a plea agreement in which the government agreed to recommend a substantial variance from the Sentencing Guidelines. He then successfully advocated for a sentence that was substantially less than that urged by the government. Judge Sessions imposed the 108-month sentence, noting the serious nature of the offense conduct, the fact that firearms and threats of violence were employed during the conspiracy, and the fact that Cooper's prior record of criminal convictions gave rise to a designation as a career offender. Cooper can point to nothing in the record to support his burden to show that a different sentence would have been imposed.

## Conclusion

In order to satisfy the *Strickland* test, Petitioner must meet the standards of both deficient performance by counsel and resulting prejudice. Cooper satisfies neither *Strickland* component. Under § 2255, an evidentiary hearing is not required when, "viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner," it is clear that the petitioner has failed to establish a "plausible claim of ineffective assistance of counsel." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quotation marks omitted); see also 28 U.S.C. § 2255(b). A review of the record reveals that Cooper has failed to establish a plausible claim for ineffective assistance of counsel and therefore an evidentiary hearing is not necessary. Based on the foregoing I recommend that Cooper's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 603) be DENIED.

Dated at Burlington, in the District of Vermont, this 11th day of December, 2013.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989).